# EXHIBIT A

*Hand delivered on 2/18/20 @ 9:34Am Tasha Burgess*

## SUMMONS

Attorney(s) Schwartz Sladkus Reich Greenberg Atlas LLP

Office Address 444 Madison Avenue

Town, State, Zip Code New York, NY 10022

Telephone Number 212-743-7054

Attorney(s) for Plaintiff Michael Gottlieb

GREGORY RAUSCHER, M.D.

_____ Plaintiff(s)

vs.

CIGNA HEALTH AND LIFE

INSURANCE COMPANY

_____ Defendant(s)

## Superior Court of New Jersey

Bergen     County

C iv i   Division

Docket No: L - 0 0 | 0 0 3 - 2 o

## CIVIL ACTION
## SUMMONS

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.

/1. Chelle /1. Sm. Ph .
Clerk of the Superior Court

DATED: 02/11/2020

Name of Defendant to Be Served: CIGNA HEALTH AND LIFE INSURANCE COMPANY

Address of Defendant to Be Served: 900 Cottage Grove Road, Bloomfield, CT 06002

A True Copy
Attest:

Process Server
Michael Walton

Revised 11/17/2014, CN 10792-English (Appendix XII-A)

# Civil Case Information Statement

### Case Details: BERGEN | Civil Part Docket# L-001003-20

Case Caption: GREGORY RAUSCHER, M. D.  VS CIGNA
HEALTH AND LIF

Case Initiation Date: 02/11/2020

Attorney Name: MICHAEL GOTTLIEB

Firm Name: SCHWARTZ SLADKUS REICH GREENBERG
ATLAS LLP

Address: 444 MADISON AVE FL 6
NEW YORK NY 10022

Phone: 2127437000

Name of Party: PLAINTIFF : GREGORY RAUSCHER, M.D.

Name of Defendant's Primary Insurance Company
(if known): Unknown

Case Type: CONTRACT/COMMERCIAL TRANSACTION

Document Type: Complaint with Jury Demand

Jury Demand: YES - 6 JURORS

Is this a professional malpractice case?  NO

Related cases pending: NO

If yes, list docket numbers:

Do you anticipate adding any parties (arising out of same
transaction or occurrence)? NO

Are sexual abuse claims alleged? NO

### THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

Do parties have a current, past, or recurrent relationship? NO

If yes, is that relationship:

Does the statute governing this case provide for payment of fees by the losing party? NO

Use this space to alert the court to any special case characteristics that may warrant individual
management or accelerated disposition:


Do you or your client need any disability accommodations? NO
     If yes, please identify the requested accommodation:


Will an interpreter be needed? NO
     If yes, for what language:


Please check off each applicable category: Putative Class Action? NO  Title 59? NO  Consumer Fraud? NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the
court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

02/11/2020
Dated

/s/ MICHAEL GOTTLIEB
Signed

A True Copy
Attest:

Process Server
Michael Walton

SCHWARTZ SLADKUS REICH
GREENBERG ATLAS LLP
Michael Gottlieb, Esq. (NJ Attorney ID No.: 07592-2013)
444 Madison Avenue
New York, New York 10022
Phone Number: (212) 743-7054
Fax Number: (212) 743-7001
*Attorneys for Plaintiff, Gregory Rauscher, M.D.*

| | |
|---|---|
| GREGORY RAUSCHER, M.D., | SUPERIOR COURT OF NEW JERSEY |
| | LAW DIVISION: |
| Plaintiff, | BERGEN COUNTY |
| | |
| v. | DOCKET NO.: |
| | |
| CIGNA HEALTH AND LIFE | CIVIL ACTION |
| INSURANCE COMPANY, | |
| | **COMPLAINT** |
| Defendant. | |

Plaintiff, Gregory Rauscher, M.D. ("Plaintiff"), on assignment of Nicholas D., by and

through his attorneys, Schwartz Sladkus Reich Greenberg Atlas LLP, by way of Complaint

against Cigna Health and Life Insurance Company ("Defendant"), alleges as follows:

1.  Plaintiff is a New Jersey medical practitioner registered to do business in the State

of New Jersey with a principal place of business at 20 Prospect Avenue, Hackensack, New

Jersey 07601.

2.  Upon information and belief, Defendant is engaged in providing and/or

administering health care plans or policies in the state of New Jersey.

3.  On July 19, 2018, Plaintiff performed surgical treatment on Nicholas D.

("Patient") to treat a bilateral inguinal herniae which was causing Patient chronic back pain. (*See*,

**Exhibit A**, attached hereto.)

1

4.    At the time of his treatment, Patient was the beneficiary of an employer-based health insurance plan for which Defendant served as claims administrator.

5.    As an out-of-network provider, Plaintiff does not have a network contract with Defendant that would determine the reimbursement rate for Plaintiff's treatment of Defendant's members.

6.    However, Patient was referred to Plaintiff by an in-network provider who felt that Patient would be best served by having Plaintiff treat Patient's condition.

7.    Due to the unique circumstances of Patient's situation, Defendant granted Patient an in-network exception pursuant to Defendant's "network adequacy provision."

8.    Pursuant to the terms of the in-network exception, Patient was entitled to insurance coverage for Plaintiff's treatment under which his liability for Plaintiff's treatment would be limited to the cost-sharing that would apply had the treatment been performed by an in-network doctor.

9.    Patient assigned his applicable health insurance rights and benefits to Plaintiff. (*See*, **Exhibit B**, attached hereto.)

10.    After treating Patient, Plaintiff submitted a HCFA medical bill to Defendant demanding payment for the performed treatment in the total amount of $167,950.00. (*See*, **Exhibit C**, attached hereto.)

11.    On or around October 11, 2018, Defendant issued an explanation of benefits indicating that only $5,087.04 of Plaintiff's charges were covered, of which $3,432.78 was paid by Defendant, $1,471.18 was attributed as Patient's coinsurance liability, and $183.08 was attributed as Patient's co-pay liability. (*See*, **Exhibit D**, attached hereto.)

12.     Of the remaining $162,862.96 in Plaintiff's charges that were not covered by Defendant, $96,037.96 was attributed by Defendant as Patient's responsibility. The remaining $66,825.00 was regarded by Defendant as a "discount" even though Plaintiff never agreed to a discount. *Id.*

13.     On or around February 5, 2019, Plaintiff submitted an internal appeal to Defendant, challenging Defendant's payment determination, and specifically noting that Defendant's reimbursement was inconsistent with the in-network exception that was granted prior to Patient's treatment. (*See*, **Exhibit E**, attached hereto.)

14.     On or around May 31, 2019, Defendant issued an appeal response stating that additional coverage would be afforded for Plaintiff's treatment of Patient. (*See*, **Exhibit F**, attached hereto.)

15.     However, on or around June 13, 2019, following Defendant's appeal response, Defendant issued an explanation of benefits indicating that the covered amount for Patient's treatment remained $5,087.04. (*See*, **Exhibit G**, attached hereto.)

16.     Pursuant to Defendant's revised explanation of benefits, Defendant's "increased benefits" provided in response to Plaintiff's appeal came in the following forms: (1) Defendant eliminated Patient's coinsurance and co-pay liability by submitting an additional payment check to Plaintiff in the amount of $1,654.26 to cover this liability; and (2) Defendant increased the "discount" that Plaintiff never agreed to from $66,825.00 to $146,737.96, thereby purporting to limit Patient's liability to $16,125.00. *Id.*

17.     On or around October 18, 2019, Plaintiff submitted a final internal appeal to Defendant, challenging Defendant's reimbursement as an underpayment, and emphasizing that

3

Defendant had no legal basis to unilaterally apply a discount of $146,737.96 to Plaintiff's charges. (*See*, **Exhibit H**, attached hereto.)

18.     However, on or around November 14, 2019, Defendant denied Plaintiff's final appeal.

19.     Pursuant to the in-network exception that was granted under Defendant's network adequacy provision, Defendant should have reimbursed Plaintiff in a manner that limited Patient's liability to the cost-sharing that would apply had the treatment been performed by an in-network doctor.

20.     Indeed, Defendant purported to comply with the terms of the in-network exception by unilaterally applying a discount of $146,737.96 to Plaintiff's charges even though Plaintiff never agreed to any such discount.

21.     Under the terms of Patient's insurance plan, and the applicable in-network exception, Defendant should have reimbursed Plaintiff the $146,737.96 that Defendant unilaterally discounted.

22.     Plaintiff has thus been damaged in the total amount of $146,737.96.

23.     Accordingly, Plaintiff brings this action for recovery of the outstanding balance.

### COUNT ONE

#### BREACH OF ASSIGNED CONTRACT

24.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 23 of the Complaint as though fully set forth herein.

25.     Plaintiff has standing to seek such relief based on the assignment of benefits obtained by Plaintiff from Patient.

4

26.     Plaintiff is entitled to recover benefits due to Patient under his applicable insurance benefits plan administered by Defendant.

27.     Defendant failed to issue full payment under the terms of Patient's insurance benefits plan.

28.     As a result, Plaintiff has been damaged and continues to suffer damages in the operation of its medical practice.

### CLAIM FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

A.     For an Order directing Defendant to pay Plaintiff $146,737.96;
B.     For an Order directing Defendant to pay Plaintiff all benefits Patient would be entitled to under his insurance plan or policy administered by Defendant;
C.     For compensatory damages and interest;
D.     For costs of suit; and
E.     For such other and further relief as the Court may deem just and equitable.

Dated: New York, New York
       February 11, 2020

                                        SCHWARTZ SLADKUS
                                        REICH GREENBERG ATLAS LLP
                                        *Attorneys for Plaintiff*

                         By:
                                        _____
                                        Michael Gottlieb
                                        444 Madison Avenue
                                        New York, New York 10022
                                        (212) 743-7054

5

### DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25-4, Michael Gottlieb, Esq. is hereby designated as trial counsel in the above captioned litigation on behalf of the firm of Schwartz Sladkus Reich Greenberg Atlas LLP.

### CERTIFICATION PURSUANT TO RULE 1:38-7(b)

I certify that confidential personal identifiers have been redacted from documents now submitted to the court and will be redacted from all documents submitted in the future.

### CERTIFICATION PURSUANT TO RULE 4:5-1

The matter in controversy is not the subject of any other action pending in any other Court. There are no pending arbitration proceedings. No other action or arbitration proceedings are contemplated. No non-party is known who would be subject to joinder because of potential liability.

SCHWARTZ SLADKUS REICH
GREENBERG ATLAS LLP
Attorneys for Plaintiff

By:

Michael Gottlieb
444 Madison Avenue
New York, New York 10022
(212) 473-7054

Dated: February 11, 2020

A True Copy
Attest:

Process Server
Michael Walton

6

BER-L-001003-20   02/11/2020 3:20:30 PM   Pg 1 of 5 Trans ID: LCV2020288368

# EXHIBIT A

BER-L-001003-20  02/11/2020 3:20:30 PM  Pg 2 of 5 Trans ID: LCV2020288368

To: GREGORY RAUSCHER   Fax 2014896966          From: Holy Name Medical Center          Date: 08/06/18 06:32PM Page 1 of 4

Holy Name Medical Center

718 Teaneck Road
Teaneck, NJ 07666

The information contained in this facsimile message is privileged and CONFIDENTIAL and is intended only for the use of the addressee above. If you are neither the intended recipient of the employee or agent responsible for delivering this information to the intended recipient you are hereby notified that any disclosure, copying, distribution or taking of any action in reliance on the contents of this information is strictly prohibited.

If you have received this copy in error, please immediately notify us by telephone at 201-833-3000.

ORDER CODE: OPR    MR  OPERATIVE REPORT
PATIENT:                    ,NICHOLAS R

ORDER #:          51800688
DATE/TIME:  7/20/18  7:59

MR #:              230765

PATIENT NAME:              NICHOLAS

DATE OF OPERATION:

PREOPERATIVE DIAGNOSES:
1.   Bilateral inguinal hernias, midline 25 cm x 8 cm ventral
abdominal wall hernia.
2.   Chronic back pain.

POSTOPERATIVE DIAGNOSES:
1.   Bilateral inguinal hernias, midline 25 cm x 8 cm ventral
abdominal wall hernia.
2.   Chronic back pain.

PROCEDURE:  Bilateral component separation of right and left
internal and external oblique muscles; for rectus muscle midline
plication ;bilateral fascial flap elevation of right and left
abdominal
wall; adjacent tissue transfer over 300 sq cm less than 400 sq
cm excision of 25 cm x 16 cm full thickness midline skin; ablation
of umbilicus with neo
umbilicoplasty; repair of bilateral fasciocutaneous wall defect
status post preparation of muscle flaps for abdominal wall
closure and insertion of JP drain with closure of external 25 cm
x 16 cm surgically created wound.

SURGEON: GREGORY RAUSCHER, MD

ASSISTANT:

ANESTHESIA:  General anesthesia.

HISTORY/INDICATIONS:  This patient is a male who is presently 57
years of age.  The patient has been plagued with chronic back
pain for a number of years and has been evaluated by Dr. Stavros
Christoudias concerning this enormous ventral hernia and
bilateral inguinal hernia.  Patient's musculature is
exceptionally attenuated and he will require a complete resection
of the atrophic anterior ventral hernia sac which measures 25 x 8
cm.  In
addition, he will require adhesiolysis as well as repair of the
inguinal hernias and a reconstruction of the entire abdominal
wall with mesh.  To further facilitate and improve midline ventral
repair as his rectus muscles are atretic and can spread so far that
they cannot
be simply coapted in the middle.  A component separation of the
lateral abdominal musculature is essential.  With this component
muscle separation being done, it will be possible to close the
abdominal defect without tension and decrease the probability of
hernia recurrence significantly.
Separation of the right and left internal and external oblique

——— HOLY NAME MEDICAL CENTER ——— FACSIMILE ——— CONFIDENTIAL ———

FORM( HISFXCVR

BER-L-001003-20   02/11/2020 3:20:30 PM   Pg 3 of 5 Trans ID: LCV2020288368

To: GREGORY RAUSCHER   Fax: 2014896966      From: Holy Name Medical Center      Date: 08/06/18 06:32PM Page 2 of 4

**Holy Name Medical Center**

718 Teaneck Road
Teaneck, NJ 07666

The information contained in this fax message is privileged and CONFIDENTIAL and is intended only for the use of the addressee above. If you are neither the intended recipient or the employee or agent responsible for delivering this information to the intended recipient, you are hereby notified that any disclosure, copying, distribution or taking of any action in reliance on the content of this information is strictly prohibited.

If you have received this copy in error, please notify us immediately by telephone at 201-633-3000.

*** CONTINUED FROM PREVIOUS PAGE ***
ORDER CODE: OPR   MR   OPERATIVE REPORT
PATIENT:          NICHOLAS R

ORDER #:            51800585
DATE/TIME:   7/20/18   7:59

MR #:              230765

muscles will be done after developing bilateral fasciocutaneous flaps. The patient will have the mesh closure done after the flaps have been elevated and Dr. Christoudias, the general surgeon who is doing the laparoscopic adhesiolysis, will place the mesh intra-abdominally.

The details of the actual inguinal hernia repair, laparoscopic adhesiolysis and the insertion of the retroperitoneal mesh will be dictated by Dr. Christoudias as he is the laparoscopic general surgical specialist performing this part of the procedure and consequently, he will dictate it separately as well as the cooptation of the rectus muscles that have been released.

The full-thickness skin flaps which will be raised will measure over 300 cm and less than 400 cm because the virtual height of the excision of the hernia sac will be 25 cm in length. This anterior midline skin resection will include the umbilicus and the excision of the width of the hernia sac itself with full-thickness skin will measure 8 cm and an additional 8cm of flaccid skin.. There will have to be an additional 8 cm of skin raised above the right and left side of the abdominal skin excision site so that access to the semilunar line of both the right and left lateral rectus muscle, can be done so the component muscle separation can be effectively performed.

The skin and fascial cutaneous muscle flap closure will accomplished after Dr. Christoudias has completed his mesh reconstruction intra-abdominally as well as the repair of the inguinal
hernia defects. I will also be repairing the remaining external defects of the muscle and skin.

DESCRIPTION/FINDINGS OF THE PROCEDURE: After the patient had general anesthesia administered, the hair on the abdomen was surgically shaved and the patient had the abdominal wall completely prepped and draped with surgical solution and the field properly isolated with plastic drapes . I, Dr. Rauscher, then vertically excised the 25 cm vertical x 16 cm wide full-thickness skin that
was atretic which included skin, subcutaneous tissue, umbilicus, fat and peritoneum. The umbilicus was included with this resection that went down to peritoneal fascia. The abdominal anterior wall skin and fat resection was accomplished and at this point, Dr. Christoudias then performed the laparoscopic adhesiolysis of the internal adhesions of the abdominal contents which included omentum and release of the falciform ligament and other adhered areas. This internal laparoscopic adhesiolysis was done through three separate laparoscopic trocar punctures through the lateral abdominal wall lateral to the component flaps that would be dissected later to permit freeing of the rectus muscle that it could be sewn midline.

HOLY NAME MEDICAL CENTER  —  FACSIMILE  —  CONFIDENTIAL

*FORM: H18FXCVR*

BER-L-001003-20   02/11/2020 3:20:30 PM   Pg 4 of 5 Trans ID: LCV2020288368

To: GREGORY RAUSCHER   Fax: 2014896966        From: Holy Name Medical Center            Date: 08/06/18 06:32PM Page 1 of 4

# Holy Name Medical Center

718 Teaneck Road
Teaneck, NJ 07666

The information contained in this fax message is privileged and CONFIDENTIAL and is intended only for the use of the addressee above. If you are neither the intended recipient or the employee or agent responsible for delivering this information to the intended recipient, you are hereby notified that any disclosure, copying, distribution or taking of any action in reliance on the content of this information is strictly prohibited.
If you have received this copy in error, please immediately notify us by telephone at 201-833-3000.

*** CONTINUED FROM PREVIOUS PAGE ***
ORDER CODE: OPR   MR   OPERATIVE REPORT                ORDER #:        51800685
PATIENT:          ███████  NICHOLAS R                  DATE/TIME:   7/20/18   7:59

                                                        MR #:           230765 ████

Once the patient had the laparoscopic aspect of the procedure
completed, the patient having the full-thickness skin resected as
described and the full-thickness excision including the hernia
sac, skin flaps were raised on both the right and left abdomen
lateral to the skin excision. The skin flaps were 25 cm in
height and on the right side 9 cm laterally and on the left side
8 cm laterally. The large skin flaps were further retracted
with large Army-Navy retractors and when the flaps were properly
raised vertical incisions were made at the precise edge of the
semilunar junction lateral to the right and left rectus
muscle. Careful dissection was done in both of these areas and
the anterior surface of each external oblique muscle was released
from the midline rectus muscle sheath and this surgical
dissection was done sharply.

Next, there was sharp dissection done to the internal oblique
muscle which similarly separated from the external oblique
muscle. This dissection was done sharply and bluntly under the
external oblique avoiding the critical blood vessels that
perfused both the right and left external oblique muscles. This
muscular dissection was completed in a relatively avascular plane
sparing the nerve that innervated the oblique muscles to the
point that the lateral aspect of the external oblique was
completely free and the rectus muscle could be raised and coapted
to the midline without tension. It was possible at this point to
bring the rectus muscle exactly midline without tension. When
these bilateral fasciocutaneous flaps were freed, there was
complete ability to move the external oblique muscle laterally
and permit the rectus muscle to be free.

At this point in surgery, Dr. Christoudias entered the operating
room again and he proceeded to perform insertion of the 30 cm x
20 cm mesh which would be placed intra-abdominally. Dr.
Christoudias will describe this muscle repair with mesh. He also
similarly will describe the rectus hernia repair particulars and the
fact that he coapted after the hernia muscle was repaired with
mesh, and the posterior mesh placed in the abdominal wall
coapting then the rectus muscle with multiple permanent sutures
of 1 and 0 Prolene.

With the inguinal hernia reconstruction done as well as the
rectus muscle repair completed in the midline and the intra-
abdominal mesh placed by Dr. Christoudias, he left the operating
room.

The surgical wound was irrigated with gentamicin solution and all
the flaps were irrigated again with saline to show that there
were no other bleeders noted. No bleeding was noted and the
surgical site was dry. Then the fasciocutaneous flaps
bilaterally were repaired down to the edge to the rib superiorly
and to the inguinal ligament inferiorly with 3-0 Vicryl suture.
The patient had a Jackson-Pratt drain placed to capture any

──── HOLY NAME MEDICAL CENTER ──── FACSIMILE ──── CONFIDENTIAL ────

FORM: HISFXCVR

BER-L-001003-20   02/11/2020 3:20:30 PM  Pg 5 of 5 Trans ID: LCV2020288368

To: GREGORY RAUSCHER   Fax: 2014896966          From: Holy Name Medical Center          Date: 08/06/18 06:32PM Page 4 of 4

Holy Name Medical Center

718 Teaneck Road
Teaneck, NJ 07666

The information contained in this fax message is privileged and CONFIDENTIAL and is intended only for the use of the addressee above. If you are neither the intended recipient for the employee or agent responsible for delivering this information to the intended recipient, you are hereby notified that any disclosure, copying, distribution or taking of any action in reliance on the content of this information is strictly prohibited.
If you have received this copy in error, please immediately notify us by telephone at 201-833-3000.

```
*** CONTINUED FROM PREVIOUS PAGE ***
ORDER CODE: OPR    MR  OPERATIVE REPORT          ORDER #:         51800685
  PATIENT:        ,NICHOLAS R                    DATE/TIME:   7/20/18  7:59

                                                 MR #:            230765
```

potential serum postoperatively.  The Jackson-Pratt drain was
secured to the skin through several puncture wounds with 3-0
silk.

The large fasciocutaneous flaps which were well perfused then had
the large skin flaps that were raised secured down to the skin flaps
obliterating the dead space with progressive suture technique
using 3-0 PDS coapting the inferior edge of the skin flaps down
to the edges of the external and oblique muscles.  With the dead
space completely obliterated, this progressive suture technique
was continued until such time that the midline closure was edge-
to-edge with the full-thickness flaps.  No less than 300
sutures were placed to accommodate closure of the dead space on
the large skin flaps as well as then sewing the midline flap
itself in multiple layers obliterating fat-to-fascia, fascia-to-
fascia, dermis-to-dermis.

Vigorous irrigation of the wound was done once the skin was
brought to the midline.  The patient had the repair of the
Scarpa's and Camper's fascia with 3-0 Vicryl suture down to the
rectus muscle.  As mentioned, the umbilicus had been sacrificed.
However, where the umbilicus would be located, the midline skin
flap inferior edge was defatted and thinned so that only dermis
existed and this dermal flap was then secured down to the rectus
fascia with 3-0 Vicryl so that a neo umbilicus was formed.

The patient then had subcuticular repair of the entire 25cm long
skin flap from xiphoid almost to pubis with 4-0 Prolene, and
interrupted 5-0 Prolenes were also used on the skin for edge-to-
edge closure.  At this point, the patient had Xeroform gauze and
bacitracin applied. ABDs and three laparoscopic puncture wound
dressings were placed over the laparoscopic puncture holes. The
subcutaneous drains were placed to suction.


The patient tolerated the procedure well and was brought back to
the recovery room condition corrected.




GR/DN/gos
DICTATED:    07/19/2018 12:08
TRANSCRIBED:  07/19/2018 13:50
JOB #: 63926

Electronically signed by Gregory Rauscher, MD on
08/06/2018 at 06:31:28 PM

--------------------*--------------------*--------------------*----------------

       HOLY NAME MEDICAL CENTER ---------- FACSIMILE ---------- CONFIDENTIAL
FORM: RISFKCVR

# EXHIBIT B

## GREGORY RAUSCHER MD

20 Prospect Ave., Suite 600
Hackensack, NJ 07601

## ASSIGNMENT OF BENEFITS

&

## LTD. POWER OF ATTORNEY

I irrevocably assign to you, my medical provider, all of my rights and benefits under my insurance contract and/or any employee welfare benefit plan for payment for services rendered to me, including but not limited to all of my rights under "ERISA" applicable to the medical services at issue. I authorize you to file insurance claims on my behalf for services rendered to me and this specifically includes filing arbitration/litigation in your name on my behalf against the PIP carrier/health care carrier. I irrevocably authorize you to retain an attorney of your choice on my behalf for collection of your bills. I direct that all reimbursable medical payments go directly to you, my medical provider, and I authorize and consent to your acting on my behalf in this regard and in regard to my general health insurance coverage and I specifically authorize you to pursue any administrative appeals conducted pursuant to "ERISA".

In the event the insurance carrier responsible for making medical payments in this matter does not accept my assignment, or my assignment is challenged or deemed invalid, I execute this limited/special power of attorney and appoint and authorize your collection attorney as my agent and attorney to collect payment for your medical services directly against the carrier in this case, in my name, including filing an arbitration demand or lawsuit. I specifically authorize that attorney to file directly against that carrier in my name or in your name as a medical provider rendering services to me and designate your collection attorney as my attorney in fact. I further grant limited power of attorney to you as my medical provider to receive and collect directly from the insurance carrier money due you for services rendered to me in this matter, and hereby instruct the insurance carrier to pay you directly any monies due you for medical services you rendered to me. I authorize you and/or your attorney to receive from my insurer, immediately upon verbal request, all information regarding last payment made by said insurer on my claim, including date of payment and balance of benefits remaining.

I authorize you and/or your attorney to obtain medical information regarding my physical condition from any other health care provider, including hospitals, diagnostic centers, etc., and I specifically authorize such health care provider(s) to release all such information to you about me, including medical reports, X-ray reports, narrative reports, and any other report or information regarding my physical condition.

Dated: 7/9/18

Patient's Signature

Patient's Name (Print)

# EXHIBIT C

BER-L-001003-20   02/11/2020 3:20:30 PM  Pg 2 of 2 Trans ID: LCV2020288368

# HEALTH INSURANCE CLAIM FORM

APPROVED BY NATIONAL UNIFORM CLAIM COMMITTEE (NUCC) 02/12

Cigna Healthcare 62308
P O Box 182223

Chattanooga          TN   37422 7223

□□ PICA | | | | | PICA □□

| 1. MEDICARE (Medicare#) | MEDICAID (Medicaid#) | TRICARE (ID#/DoD#) | CHAMPVA (Member ID#) | GROUP HEALTH PLAN (ID#) | FECA BLK LUNG (ID#) | OTHER (ID#) | 1a. INSURED'S I.D. NUMBER   (For Program in Item 1) |
|---|---|---|---|---|---|---|---|

2. PATIENT'S NAME (Last Name, First Name, Middle Initial)
Nicolas

3. PATIENT'S BIRTH DATE    SEX   M X  F □

4. INSURED'S NAME (Last Name, First Name, Middle Initial)
Nicolas

5. PATIENT'S ADDRESS (No., Street)

6. PATIENT RELATIONSHIP TO INSURED   Self X  Spouse □  Child □  Other □

7. INSURED'S ADDRESS (No., Street)

CITY                    STATE NJ

8. RESERVED FOR NUCC USE

CITY                    STATE NJ

ZIP CODE        TELEPHONE (Include Area Code)

ZIP CODE        TELEPHONE (Include Area Code)

9. OTHER INSURED'S NAME (Last Name, First Name, Middle Initial)

10. IS PATIENT'S CONDITION RELATED TO:

11. INSURED'S POLICY GROUP OR FECA NUMBER
00612839

a. OTHER INSURED'S POLICY OR GROUP NUMBER

a. EMPLOYMENT? (Current or Previous)  YES □  NO X

a. INSURED'S DATE OF BIRTH    SEX   M □  F □

b. RESERVED FOR NUCC USE

b. AUTO ACCIDENT?  YES □  NO X   PLACE (State)

b. OTHER CLAIM ID (Designated by NUCC)

c. RESERVED FOR NUCC USE

c. OTHER ACCIDENT?  YES □  NO X

c. INSURANCE PLAN NAME OR PROGRAM NAME

d. INSURANCE PLAN NAME OR PROGRAM NAME

10d. CLAIM CODES (Designated by NUCC)

d. IS THERE ANOTHER HEALTH BENEFIT PLAN?  YES □  NO X   If yes, complete items 9, 9a, and 9d.

READ BACK OF FORM BEFORE COMPLETING & SIGNING THIS FORM.

12. PATIENT'S OR AUTHORIZED PERSON'S SIGNATURE  I authorize the release of any medical or other information necessary to process this claim. I also request payment of government benefits either to myself or to the party who accepts assignment below.

SIGNED  Signature On File          DATE  04 30 19

13. INSURED'S OR AUTHORIZED PERSON'S SIGNATURE  I authorize payment of medical benefits to the undersigned physician or supplier for services described below.

SIGNED  Signature On File

14. DATE OF CURRENT ILLNESS, INJURY, or PREGNANCY (LMP)   QUAL.

15. OTHER DATE   QUAL.   MM DD YY

16. DATES PATIENT UNABLE TO WORK IN CURRENT OCCUPATION  FROM        TO

17. NAME OF REFERRING PROVIDER OR OTHER SOURCE   17a.   17b. NPI

18. HOSPITALIZATION DATES RELATED TO CURRENT SERVICES  FROM        TO

19. ADDITIONAL CLAIM INFORMATION (Designated by NUCC)

20. OUTSIDE LAB?  YES □  NO X   $ CHARGES  0 00

21. DIAGNOSIS OR NATURE OF ILLNESS OR INJURY  Relate A-L to service line below (24E)   ICD Ind. 0

A. K40 20   B. K43 9   C. M54 5   D.

E.   F.   G.   H.

I.   J.   K.   L.

22. RESUBMISSION CODE          ORIGINAL REF. NO.

23. PRIOR AUTHORIZATION NUMBER

| | 24. A. DATE(S) OF SERVICE From MM DD YY  To MM DD YY | B. PLACE OF SERVICE | C. EMG | D. PROCEDURES, SERVICES, OR SUPPLIES CPT/HCPCS   MODIFIER | E. DIAGNOSIS POINTER | F. $ CHARGES | G. DAYS OR UNITS | H. EPSDT Family Plan | I. ID QUAL. | J. RENDERING PROVIDER ID. # |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 07 19 18  07 19 18 | 22 | | 15734   RT | A B C | 42500 00 | 1 | | NPI | 1346244159 |
| 2 | 07 19 18  07 19 18 | 22 | | 15734   LT | A B C | 42500 00 | 1 | | NPI | 1346244159 |
| 3 | 07 19 18  07 19 18 | 22 | | 14301 | A B C | 23825 00 | 1 | | NPI | 1346244159 |
| 4 | 07 19 18  07 19 18 | 22 | | 14302 | A B C | 59125 00 | 11 | | NPI | 1346244159 |
| 5 | | | | | | | | | NPI | |
| 6 | | | | | | | | | NPI | |

25. FEDERAL TAX I.D. NUMBER   22 231 0233   SSN □  EIN X

26. PATIENT'S ACCOUNT NO.   46924

27. ACCEPT ASSIGNMENT?  YES X  NO □

28. TOTAL CHARGE  $ 167950 00

29. AMOUNT PAID  $ 3432 78

30. Rsvd for NUCC Use  164517 22

31. SIGNATURE OF PHYSICIAN OR SUPPLIER INCLUDING DEGREES OR CREDENTIALS (I certify that the statements on the reverse apply to this bill and are made a part thereof.)

Gregory E Rauscher MD  04 30 19
SIGNED                DATE

32. SERVICE FACILITY LOCATION INFORMATION
Hackensack University Medical Center  Main OR
30 Prospect Avenue
Hackensack  NJ 07601 1914
a. 1457466279   b.

33. BILLING PROVIDER INFO & PH #   201 488 1036
Gregory E Rauscher MD
20 Prospect Avenue Suite 600
Hackensack  NJ 07601 1982
a. 1346244159   b.

NUCC Instruction Manual available at: www.nucc.org          PLEASE PRINT OR TYPE          APPROVED OMB-0938-1197 FORM 1500 (02-12)

# EXHIBIT D

🌳 **Cigna.**

Claim received for NICHOLAS ▮▮▮
Reference # 181467432500
Subscriber ID ▮▮▮

THIS IS NOT A BILL

## Claim Detail

*Cigna received this claim on August 9, 2018 and processed it on October 11, 2018.*

Patient's relationship to subscriber: Subscriber

Subscriber: NICHOLAS ▮▮▮

| Service dates | Type of service | DRG/APC Code | Amount billed | Discount | Amount not covered | Covered amount | Copay/Deductible | Plan paid | Coinsurance | Patient owes | See notes |
|---|---|---|---|---|---|---|---|---|---|---|---|
| RAUSCHER, GREGORY E, MD, Patient # 45924 Provider network status: OUT OF NETWORK | | | | | | | | | | | |
| 20 PROSPECT AVE | | | | | | | | | | | |
| STE 600 | | | | | | | | | | | |
| HACKENSACK NJ 07601-1962 | | | | | | | | | | | |
| 07/19/18 | SURGERY | | 42,500.00 | 0.00 | 39,108.64 | 3,391.36 | 183.08 | 2,245.80 | 962.48 | 40,254.20 | MR2 |
| 07/19/18 | SURGERY | | 42,500.00 | 0.00 | 40,804.32 | 1,695.68 | 0.00 | 1,186.98 | 508.70 | 41,313.02 | MR2 |
| 07/19/18 | SURGERY | | 23,825.00 | 23,825.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | XJP |
| 07/19/18 | SURGERY | | 5,375.00 | 5,375.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | XJP |
| 07/19/18 | SURGERY | | 5,375.00 | 5,375.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | XJP |
| 07/19/18 | SURGERY | | 5,375.00 | 5,375.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | XJP |
| 07/19/18 | SURGERY | | 5,375.00 | 5,375.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | XJP |
| 07/19/18 | SURGERY | | 5,375.00 | 5,375.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | XJP |
| 07/19/18 | SURGERY | | 5,375.00 | 5,375.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | XJP |
| 07/19/18 | SURGERY | | 5,375.00 | 5,375.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | XJP |
| 07/19/18 | SURGERY | | 5,375.00 | 5,375.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | XJP |
| 07/19/18 | SURGERY | | 5,375.00 | 0.00 | 5,375.00 | 0.00 | 0.00 | 0.00 | 0.00 | 5,375.00 | N28 |

RETAIN THIS FOR YOUR RECORDS.

**Cigna.**

Claim received for NICHOLAS █████
Reference # 181467432500
Subscriber ID █████████

THIS IS NOT A BILL

## Claim Detail (continued)

| Service dates | Type of service | DRG/ APC Code | Amount billed | Discount | Amount not covered | Covered amount | Copay/ Deductible | Plan paid | Coinsurance | Patient owes | See notes |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 07/13/18 | SURGERY | | 5,375.00 | 0.00 | 5,375.00 | 0.00 | 0.00 | 0.00 | 0.00 | 5,375.00 | h28 |
| 07/19/18 | SURGERY | | 5,375.00 | 0.00 | 5,375.00 | 0.00 | 0.00 | 0.00 | 0.00 | 5,375.00 | h28 |
| **Total** | | | **$167,950.00** | **$66,825.00** | **$96,037.96** | **$5,087.04** | **$183.08** | **$3,432.76** | **$1,471.18** | **$97,692.22** | |

*Reminder: A coverage determination, prior authorization, or certification that is made prior to a service being performed is not a promise to pay for the service at any particular rate or amount. The patient's summary plan description typically governs this, as every claim submitted is subject to all plan provisions, including, but not limited to, eligibility requirements, exclusions, limitations, and applicable state mandates.*

## Notes

MR2 - MEMBER'S BENEFIT PLAN LIMITS PAYMENT TO MAXIMUM REIMBURSABLE CHARGE. THE PROVIDER MAY BILL THE MEMBER FOR THE BALANCE.

XJP - WE REVIEWED THIS CLAIM AND THIS AMOUNT IS NOT COVERED. YOU'LL RECEIVE A LETTER EXPLAINING WHY IT IS NOT COVERED AND YOUR APPEAL RIGHTS.

h28 - THE QUANTITY OF UNITS BILLED EXCEEDS THE MEDICALLY UNLIKELY EDIT LIMIT.

If you'd like information on how much the customer has met towards their accumulators (e.g., deductibles), please visit our website at cignaforhcp.com or contact customer service.

RETAIN THIS FOR YOUR RECORDS.

Page 4 of 4

# EXHIBIT E

BER-L-001003-20  02/11/2020 3:20:30 PM Pg 2 of 2 Trans ID: LCV2020288368

*# 45924*

# GREGORY E. RAUSCHER, MD, PA, FACS

Cosmetic, Plastic, and Reconstructive Surgery
Hand and Micro Surgery, Replantation

February 5, 2019

Cigna Appeals & Grievances
Attention: Level 1 Provider Appeals
Box 188062
Chattanooga, Tennessee 37422-8062

Patient Name: Nicolas ███████
ID# ███████
Service Date: 7/19/18

To whom it may concern:

Please review the payment issued for services rendered to Nicolas ████ on July 19, 2018. The applicable operative report, explanation of benefits, and bill are enclosed in order to facilitate your re-evaluation. Payment for CPT codes 14301 and 14302 (8 of 11 units) was denied citing incorrect coding. The claim was correctly coded. Cigna allowed payment for 3 of the 11 units of add-on code 14302. The primary code must be approved in order to allow payment for the add-on codes so there appears to be a processing discrepancy on Cigna's part. CPT codes 14301 and 14302 (x11) were the appropriate codes to bill, as the adjacent tissue transfer or rearrangement code *includes the excision prior to the repair.* Documentation supporting my position is attached and highlighted.

In addition, according to our records (REF#CherylT09281810:01am), a NAP Exception was granted. Therefore, the claim needs to be reprocessed to limit the member's financial obligation to his in-network cost-share. Cigna can contact me via fax# 201-428-1303 or telephone# 201-488-1036 extension 305 to initiate a negotiation.

Thank you for your prompt attention to this matter.

Sincerely,

Maggie Candio



Hackensack University Medical Plaza, 20 Prospect Avenue, Suite 600, Hackensack, NJ 07601
Phone: (201) 488-1036, Fax: (201) 489-6966

# EXHIBIT F

000368

Cigna
Appeals
PO Box 188062
Chattanooga, TN 37422

 Cigna.

May 31, 2019

Nicholas █████████

█████████ NJ ████████████████

RE:   Cigna Health and Life Insurance Company on behalf of your Employer Plan

Name: Nicholas ████████
ID #: ████████████
Provider: Gregory E. Raucher, MD, PA, FACS
Dates of Service: 07/19/2018
SR #: 1133544770

Dear Nicholas,

On April 2, 2019, we received an appeal request concerning our decision to allow the procedure codes 15734 (Muscle, Myocutaneous/Fasciocutaneous Flap; Trunk), 14301 (Adjacent Tissue Transfer or Rearrangement, Any Area; Defect 30.1 Sq cm to 60.0 Sq cm), and other services billed with diagnosis K40.20, at the out-of-network maximum reimbursable charge (mrc) allowed amount.

**Appeal Decision**
After reviewing the appeal, I'm pleased to tell you that coverage for 15734, 14301 and other services billed for for date of service 07/19/2019 with diagnosis code K40.20 is approved. These services are covered subject to your benefit plan coverage provisions at the time the service is provided. All the original information in your file, the information submitted with this request and the terms of your benefit plan were reviewed. I've now made the necessary arrangements to have the claim reprocessed.

**More About The Decision**
This decision was made on April 25, 2019 by Jessica E., Appeals Processer.

"Cigna" and the "Tree of Life" logo are service marks of Cigna Intellectual Property, Inc., licensed for use by Cigna Corporation and its operating subsidiaries. All products and services are provided by or through such operating subsidiaries and not by Cigna Corporation. Such operating subsidiaries include Cigna Health and Life Insurance Company, Connecticut General Life Insurance Company, Cigna Behavioral Health, Inc., Cigna Health Management, Inc., and HMO or service company subsidiaries of Cigna Health Corporation and Cigna Dental Health, Inc. Please refer to your ID card for the subsidiary that insures or administers your benefit plan. Cigna Health Management Inc. and Cigna Behavioral Health, Inc. are licensed or certified utilization review entities.

000369

**Questions**

If you have any questions, please write to us at:

Cigna National Appeals Organization (NAO)
Attn: Appeals
PO Box 188062
Chattanooga, TN 37422

You may also call our Customer Service Department at the toll-free number listed on your Cigna ID card. We'll be happy to help you.

Sincerely,

Jessica E.
Appeals Processor

Enclosures:    Non-Discrimination and Language Assistance Notice

c:    Gregory Rauscher

# EXHIBIT G

Cigna.

Claim received for  NICHOLAS ▇▇▇▇
Reference #     181467432501
Subscriber ID   ▇▇▇▇▇▇▇

THIS IS NOT A BILL

BER-L-001003-20  02/11/2020 3:20:30 PM  Pg 2 of 5 Trans ID: LCV20202838388

## Claim Detail

*Cigna received this claim on August 9, 2018 and processed it on June 13, 2019.*

Patient's relationship to subscriber: Subscriber

Subscriber: NICHOLAS ▇▇▇▇

| Service dates | Type of service | DRG/APC Code | Amount billed | Discount | Amount not covered | Covered amount | Copay/Deductible | Plan paid | Coinsurance | Patient owes | See notes |
|---|---|---|---|---|---|---|---|---|---|---|---|
| RAUSCHER, GREGORY E, MD; Patient # 45924 Provider network status: OUT OF NETWORK | | | | | | | | | | | |
| 20 PROSPECT AVE | | | | | | | | | | | |
| STE 600 | | | | | | | | | | | |
| HACKENSACK NJ 07601-1962 | | | | | | | | | | | |
| 07/19/18 | SURGERY | | 42,500.00 | 0.00 | 0.00 | 3,391.36 | 0.00 | 3,391.36 | 0.00 | 0.00 | IL1 MR1 |
| | | | | 39,108.64 | 0.00 | | | | | | |
| 07/19/18 | SURGERY | | 42,500.00 | 0.00 | 0.00 | 1,695.68 | 0.00 | 1,695.68 | 0.00 | 0.00 | IL1 MR1 |
| | | | | 40,804.32 | 0.00 | | | | | | |
| 07/19/18 | SURGERY | | 23,825.00 | 23,825.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | XJP |
| 07/19/18 | SURGERY | | 5,375.00 | 5,375.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | XJP |
| 07/19/18 | SURGERY | | 5,375.00 | 5,375.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | XJP |
| 07/19/18 | SURGERY | | 5,375.00 | 5,375.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | XJP |
| 07/19/18 | SURGERY | | 5,375.00 | 5,375.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | XJP |
| 07/19/18 | SURGERY | | 5,375.00 | 5,375.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | XJP |
| 07/19/18 | SURGERY | | 5,375.00 | 5,375.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | XJP |
| 07/19/18 | SURGERY | | 5,375.00 | 5,375.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | XJP |
| 07/19/18 | SURGERY | | 5,375.00 | 5,375.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | XJP A57 |

**Cigna.**

Claim received for NICHOLAS ██████
Reference # 181467432501
Subscriber ID ██████████

THIS IS NOT A BILL

## Claim Detail (continued)

| Service dates | Type of service | DRG/ APC Code | Amount billed | Discount | Amount not covered | Covered amount | Copay/ Deductible | Plan paid | Coinsurance | Patient owes | See notes |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 07/19/18 | SURGERY | | 5,375.00 | 0.00 | 5,375.00 | 0.00 | 0.00 | 0.00 | 0.00 | 5,375.00 | h28 |
| 07/19/18 | SURGERY | | 5,375.00 | 0.00 | 5,375.00 | 0.00 | 0.00 | 0.00 | 0.00 | 5,375.00 | h28 |
| 07/19/18 | SURGERY | | 5,375.00 | 0.00 | 5,375.00 | 0.00 | 0.00 | 0.00 | 0.00 | 5,375.00 | h28 |
| Total | | | $167,950.00 | $146,737.96 | $16,125.00 | $5,087.04 | $0.00 | $5,087.04 | $0.00 | $16,125.00 | |

Reminder: A coverage determination, prior authorization, or certification that is made prior to a service being performed is not a promise to pay for the service at any particular rate or amount. The patient's summary plan description typically governs this, as every claim submitted is subject to all plan provisions, including, but not limited to, eligibility requirements, exclusions, limitations, and applicable state mandates.

## Notes

IL1 - OUT OF POCKET EXPENSE MAXIMUM SHOWN IN YOUR PLAN'S MEDICAL CARE BENEFITS SCHEDULE HAS BEEN PAID. LEVEL OF BENEFIT PAYMENTS INCREASED TO 100%
MR1 - HEALTH CARE PROFESSIONAL: THE PATIENT SHOULD NOT BE LIABLE IF YOU ACCEPT THE ALLOWABLE AMOUNT. PLEASE CALL CIGNA WITH QUESTIONS.
XUP - WE REVIEWED THIS CLAIM AND THIS AMOUNT IS NOT COVERED. YOU'LL RECEIVE A LETTER EXPLAINING WHY IT IS NOT COVERED AND YOUR APPEAL RIGHTS.
h28 - THE QUANTITY OF UNITS BILLED EXCEEDS THE MEDICALLY UNLIKELY EDIT LIMIT.
ADJ - ADJUSTMENT TO PREVIOUSLY CONSIDERED CLAIM.
If you'd like information on how much the customer has met towards their accumulators (e.g., deductibles), please visit our website at cignaforhcp.com or contact customer service.

D0J636

Cigna
PO Box 188061
Chattanooga, TN 37422-8061

**Cigna.**

CIGNA HEALTH AND LIFE INSURANCE COMPANY
AS AGENT FOR BOROUGH OF NEW MILFORD 00612839

How to Contact Us
Mail to the return address in upper left corner
of this page
1-866-494-2111
www.CignaforHCP.com
Cigna
PO Box 188061
Chattanooga, TN 37422-8061

Subscriber ID

GREGORY E. RAUSCHER
20 PROSPECT AVE
STE 600
HACKENSACK NJ 07601-1962

Check number / Date
748910994 / June 13, 2019

Check amount
$1,654.26

# Explanation of payment

Account name / Account #
BOROUGH OF NEW MILFORD / 00612839

| Claim for | Service dates | Amount Billed | Plan paid |
|---|---|---|---|
| Patient# 45924 | | | |
| NICHOLAS | 07/19/18 | $167,950.00 | $1,654.26 |

STEOP_x040_1101;006      Detach at perforation                                      Page 1 of 4

BER-L-001003-20   02/11/2020 3:20:30 PM   Pg 4 of 5 Trans ID: LCV20202283268

BER-L-001003-20   02/11/2020 3:20:30 PM  Pg 5 of 5 Trans ID: LCV2020288368

# EXHIBIT H

BER-L-001003-20   02/11/2020 3:20:30 PM   Pg 2 of 3 Trans ID: LCV2020288368



SCHWARTZ
SLADKUS
REICH
GREENBERG
ATLAS LLP

Michael Gottlieb – Direct: 212-743-7154 – mgottlieb@ssrga.com

October 18, 2019

**Via First Class Mail**
Cigna National Appeals Organization
Attn: Appeals
PO Box 188062
Chattanooga, TN 37422

RE:   Patient/Insured: Nicholas ▇▇▇▇▇▇
      Member ID No.: ▇▇▇▇▇▇▇
      Date of Service: July 19, 2018
      Medical Provider: Gregory Rauscher, MD
      Underpayment amount: $146,737.96

<u>**Final Internal Appeal**</u>

Dear Sir/Madam:

Please be advised that I represent Gregory Rauscher, MD, in relation to the above captioned matter. This letter is intended to serve as a final internal appeal, as it is my client's position that he has been grossly underpaid in connection with this matter. While the details of the claim will be delineated below, please note at the outset that my client intends to commence legal action should this matter not be resolved through the appeals process.

On July 19, 2018, my client performed surgical treatment on Cigna member Nicholas ▇▇▇▇▇▇ to treat a bilateral inguinal hernia. Cigna had previously authorized the treatment pursuant to an enhanced network exception, under which the patient's cost-sharing would be limited to the amount that would apply if the treatment was performed by a network provider. However, rather than remit payment in accordance with my client's usual and customary charges, which would have limited the patient's cost-sharing in the way that Cigna had previously assured, Cigna remitted payment at approximately 3% of my client's charges.

Specifically, my client's charges for the subject treatment totaled $167,950.00. Cigna issued payment in the amount of $5,087.04 and attributed $16,125.00 as the patient's responsibility. Worse yet, Cigna indicated that the remaining $146,737.96 was neither the patient's nor Cigna's responsibly; there is no legal basis for such a unilateral determination.

BER-L-001003-20   02/11/2020 3:20:30 PM  Pg 3 of 3 Trans ID: LCV2020288368

Cigna National Appeals Organization
October 18, 2019
Page 2

It is thus my client's position that Cigna has failed to issue payment in accordance with the plan terms and/or in accordance with the enhanced network exception that was granted to my client which my client relied upon to his detriment. My client demands that Cigna pay the remaining balance of $146,737.96 or negotiate an agreed upon rate so that the patient can be held harmless as Cigna represented.

Please respond to this appeal within 30 days of receipt. As I have been retained by Dr. Rauscher to address this matter, any response, as well as all future correspondence pertaining to this matter, must be channeled through me. In addition, please note that I am available to discuss this matter further by phone at 212-743-7054, as well as by email at mgottlieb@ssrga.com.

Thank you in advance for your cooperation.

Very truly yours

Michael Gottlieb



BER L 001003-20  02/12/2020 4:52:02 AM  Pg 1 of 1  Trans ID: LCV2020291923

BERGEN COUNTY COURTHOUSE
SUPERIOR COURT LAW DIV
BERGEN COUNTY JUSTICE CTR RM 415
HACKENSACK        NJ 07601-7680
                                    TRACK ASSIGNMENT NOTICE
COURT TELEPHONE NO. (201) 221-0700
COURT HOURS  8:30 AM - 4:30 PM

                    DATE:    FEBRUARY 11, 2020
                    RE:      GREGORY RAUSCHER, M. D.  VS CIGNA HEALTH AND LIF
                    DOCKET:  BER L -001003 20

    THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 2.

    DISCOVERY IS   300 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

    THE PRETRIAL JUDGE ASSIGNED IS:  HON ROBERT L. POLIFRONI

    IF YOU HAVE ANY QUESTIONS, CONTACT TEAM      001
AT:  (201) 527-2600.

    IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
    PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.
                    ATTENTION:
                              ATT: MICHAEL GOTTLIEB
                              SCHWARTZ SLADKUS REICH GREENBE
                              444 MADISON AVE
                              FL 6
                              NEW YORK          NY 10022

ECOURTS